UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KAREN WHITE-GOYZUETA,

    Plaintiff,

v.

IVY TECH COMMUNITY COLLEGE
OF INDIANA,

    Defendant.

CAUSE NO. 3:23cv591 DRL-SJF

## OPINION AND ORDER

Karen White-Goyzueta sued her former employer, Ivy Tech Community College of Indiana, alleging discrimination and retaliation under Title VII of the Civil Rights Act and 42 U.S.C. § 1981 as well as tortious interference under Indiana law. Only her retaliation claims remain at summary judgment.[1] She says she was fired for filing a discrimination charge. Ivy Tech requests summary judgment, and the court must grant it because no genuine triable issue remains.

## BACKGROUND

The following facts are established by the summary judgment record, as viewed in the light most favorable to the nonmovant. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 710 (7th Cir. 2017). In August 2021, Ivy Tech hired Dr. White-Goyzueta, an African-American woman, as its Vice Chancellor of Academic Affairs (VCAA) at its South Bend-Elkhart campus [50-4 ¶ 13, 23]. She was responsible for the campus's academic programs—leading and supervising faculty and staff; maintaining curricula, policies, and practices; and working with leadership on strategic initiatives

---

[1] The record required her to abandon her other claims of discrimination and tortious interference.

[*id.* ¶ 15]. Her direct supervisor was then-Chancellor of the South Bend-Elkhart campus Dr. David Balkin [*id.* ¶ 16-17].

In November 2021, Dr. Balkin completed a routine evaluation of Dr. White-Goyzueta's first 90 working days of employment [*id.* ¶ 18-19]. He found she "does not meet expectations" for interpersonal relations, noting complaints from several of her peers and subordinates of her "unprofessional, condescending manner and treatment of them during different meetings and settings over her first few months" [*id.*, Ex. A, PDF 13-14]. These complainants also said her behavior and tone adversely affected their morale and campus morale [*id.* 14].

Also finding Dr. White-Goyzueta was merely "progressing toward meeting expectations" for customer service, Dr. Balkin observed she hadn't cultivated good working relationships with all deans, faculty, and staff, some of whom told him she didn't deal well with those who disagreed with her, was needlessly argumentative, had damaged her credibility and influence, and prompted others to "keep their head down and just do what they are told" to survive her tenure [*id.*]. In response, Dr. White-Goyzueta accepted these perceptions as valid [*id.* 12]. Dr. Balkin extended her probationary period an additional 90 days [50-4 ¶ 20].

On January 28, 2022, Dr. Balkin resigned, and Dr. White-Goyzueta began reporting to Interim Chancellor Andy Williams [*id.* ¶ 21]. Two months later, on March 29, she filed a charge against Ivy Tech with the Equal Employment Opportunity Commission (EEOC) asserting race discrimination and retaliation in violation of Title VII [50-2, Tr. Ex. 3, PDF 28]. She later testified in a deposition that her charge concerned disparate treatment and a hostile work environment against Dr. Balkin and Mr. Williams [50-2 Tr. 33]. She accused Ivy Tech of applying its anti-

nepotism policy in a discriminatory manner because her son was fired from the college whereas relatives of other chancellors were not [*id.* Tr. 35].

In July that year, Ivy Tech hired Dr. Tia Robinson-Cooper as chancellor of the South Bend-Elkhart campus, and she became Dr. White-Goyzueta's supervisor [50-4 ¶ 22]. Around this time, members of Ivy Tech's leadership made certain statements to Chancellor Robinson-Cooper about Dr. White-Goyzueta. In the week preceding her start, Chancellor Robinson-Cooper attended a strategic planning meeting with school leadership [50-3 Tr. 69]. During a break in programming, then-Vice President of Human Resources Mike McNichols called Dr. White-Goyzueta one of two problematic vice chancellors and advised Chancellor Robinson-Cooper that she would need to address their behavior and deal with them [50-4 ¶ 4; 56-5 Tr. 66-67, 69-70]. At this time, Mr. McNichols also told her that Dr. White-Goyzueta filed EEOC complaints against the previous chancellor [50-3 Tr. 69]. During another break in the meeting, Ivy Tech Provost Dean McCurdy told Chancellor Robinson-Cooper, "I have to talk with you at some point about your VCAA" [*id.* Tr. 72-73]. The following week, Ivy Tech President Sue Ellspermann told the chancellor to work closely with Mr. McNichols regarding her VCAA [50-4 ¶ 11; 50-3 Tr. 77].

Around September 14, Chancellor Robinson-Cooper submitted a five-page memo to Mr. McNichols seeking support in terminating Dr. White-Goyzueta, citing her inconsistent performance and lack of competence, inability to provide leadership and direction for certain programming, lack of judgment, discretion, and tact, failure to foster relationships with stakeholders, and immaturity [50-3 Tr. 36-37; 50-3 Ex. 22, PDF at 42-46]. The memo recorded various observations from July through September 2022 and expressed a lack of confidence in

3

Dr. White-Goyzueta's overall leadership and performance [50-3 Ex. 22, PDF at 42-46]. Though Mr. McNichols also believed termination was justified based on the memo, Ivy Tech decided to delay Dr. White-Goyzueta's termination until her EEOC charge was resolved [50-4 ¶ 27-28].

On September 22, Dr. White-Goyzueta met with Mr. McNichols to discuss concerns about her treatment by Chancellor Robinson-Cooper and soon after made a complaint in writing at his request [50-2 Ex. 6, PDF at 34-44]. This complaint didn't allege discrimination based on a protected characteristic, only that she and a medley of black and white colleagues were treated differently from other staff of differing races [*id.* 39-41; 50-4 ¶ 44, 49-53].[2]

On September 30, Dr. White-Goyzueta submitted a request to withdraw her EEOC charge, stating she had resolved her dispute with Ivy Tech because the persons who allegedly discriminated against her no longer worked at the college [50-2 Ex. 4, PDF at 29]. That same day, she executed a settlement agreement with Ivy Tech in which she agreed to withdraw her EEOC charge and release all claims against the college, and Ivy Tech agreed to conduct trainings with its leadership team [*id.* 30-33]. She later testified in a deposition that she withdrew her EEOC charge because Ivy Tech agreed to rehire her son [50-2 Tr. 34-36].

On November 7, Chancellor Robinson-Cooper had a meeting with Dr. White-Goyzueta in which Dr. White-Goyzueta laughed at Chancellor Robinson-Cooper's face [50-3 Tr. 39; 50-3 Ex. 23, PDF at 47]. At the instruction of Mr. McNichols, Chancellor Robinson-Cooper documented this incident, viewed as insubordinate, as an addition to the September 2022 memo [50-3 Ex. 23, PDF at 47; 56-5 Tr. 94].

---

[2] She doesn't argue that this complaint is a protected activity for her retaliation claim [59 at 9-16].

After further considering the reported performance issues, lack of respect, and professional immaturity, culminating in the events of the November 7 meeting, Ivy Tech decided to terminate Dr. White-Goyzueta [50-4 ¶ 41]. Chancellor Robinson-Cooper didn't make this decision; rather, Mr. McNichols informed her of the decision [56-5 Tr. 45, 57]. Chancellor Robinson-Cooper disagreed with the decision, and told him so, because she hoped to continue to provide Dr. White-Goyzueta mentorship [*id.* Tr. 59]. She asked him how the termination wasn't retaliatory given Dr. White-Goyzueta's previous EEOC complaint [*id.* Tr. 59-60]. Mr. McNichols replied that her charge had been closed for more than 30 days and he was comfortable with moving forward with the decision to terminate her [*id.* Tr. 61].

The record is less than clear as to who exactly made the decision to terminate. Nonetheless, on November 11, Mr. McNichols and Chancellor Robinson-Cooper met with Dr. White-Goyzueta and told her that she was terminated because of her inappropriate behavior and insubordinate actions toward Chancellor Robinson-Cooper [50-4 ¶ 42]. On December 1, Dr. White-Goyzueta filed a second EEOC charge against Ivy Tech, this time asserting discrimination based on race, sex, and retaliation in violation of Title VII [50-2 Ex. 14, PDF at 50].

On June 26, 2023, she sued Ivy Tech alleging race discrimination and retaliation under Title VII and § 1981 and tortious interference with professional employment under Indiana law. She concedes her race discrimination and tortious interference claims and proceeds on her retaliation claims alone.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

Title VII prohibits retaliation against an employee who made a charge in a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006). Section 1981 likewise covers race-based employer retaliation claims in protecting each person's right to "make and enforce contracts." 42 U.S.C. § 1981(a); *Smith v. Rosebud Farm, Inc.*, 898 F.3d 747, 752-53 (7th Cir. 2018) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)). The court applies the same standard for these two retaliation claims. *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Dr. White-Goyzueta may proceed via either the direct or indirect method of proof—one with and one without a causal link. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 885 (7th Cir. 2018); *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). She pursues both here. Whatever utility remains of these separate methods of proof, they converge on the same ultimate question: could a reasonable trier of fact infer retaliation? *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015); *accord Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016).

Under the direct method, Dr. White-Goyzueta must show (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the two. *See Runkel v. City of Springfield*, 51 F.4th 736, 746 (7th Cir. 2022). The parties leave the first two prongs undebated and argue causation alone. To demonstrate causation, Dr. White-Goyzueta must show Ivy Tech wouldn't have taken the adverse action but for her protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Baines*, 863 F.3d at 661. "A causal link requires more than the mere fact that an employer's action happens after an employee's protected activity." *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016).

Direct evidence of unlawful animus (such as the employer's admission) tends to be rare. *Baines*, 863 F.3d at 661. Dr. White-Goyzueta claims she has it. She testified that Chancellor Robinson-Cooper relayed, albeit in June 2024 when Dr. Robinson-Cooper was no longer chancellor (she left in February 2024), that President Ellspermann told her Dr. White-Goyzueta had filed an EEOC complaint and "needed to be gotten rid of" [50-2 Tr. 42-43]. For this to be direct evidence of discriminatory retaliation, a factfinder would need to rely on Dr. White-Goyzueta's account of Chancellor Robinson-Cooper's account of what President Ellspermann

7

said. Then, and only then, would it stand in factual contrast to the divergent testimony from Chancellor Robinson-Cooper and create a triable issue for a jury [50-3 Tr. 77, 93].

At summary judgment, the court may only consider admissible facts. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018). Affidavits must set out facts that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(4), and deposition testimony must too, *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). Other documents may offer facts so long as a party can establish that these facts could be presented in a form that would be admissible, *see* Fed. R. Civ. P. 56(c)(1), (c)(2). The proper question for documents used at summary judgment is whether the facts within them could be rendered admissible, not whether a foundation has been laid already. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010) ("the form produced at summary judgment need not be admissible"); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (federal rules "allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form").

Absent some exception, some reason to reclassify the statements as non-hearsay, or some purpose other than to use the statements for their truth, Dr. White-Goyzueta cites what could only be called at the start of the analysis double hearsay (nested statements made by two declarants that are offered for their truth). If so, the relayed statements would be inadmissible and could not be used at summary judgment. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 801(c); *Flanagan v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 893 F.3d 372, 375 (7th Cir. 2018); *Bombard*, 92 F.3d at 562. Dr. White-Goyzueta concedes that, if the statements were used to show she was terminated in retaliation for filing her first EEOC charge, they would be inadmissible.

8

Whether President Ellspermann's statements to Chancellor Robinson-Cooper (at the time she was employed) could be called non-hearsay, either because they were statements by a party-opponent or because they were commands (or effectively commands), *see* Fed. R. Evid. 801(a), (d)(2); *Flanagan*, 893 F.3d at 374-75, Dr. Robinson-Cooper's statement to Dr. White-Goyzueta, at a time when Dr. Robinson-Cooper was not chancellor or any other representative of the college, could not be so construed, *see* Fed. R. Evid. 801(a). So in lieu, Dr. White-Goyzueta offers this statement, so she says, not for its truth, but to demonstrate that Dr. Robinson-Cooper disfavored the decision to terminate Dr. White-Goyzueta. Of course, Dr. Robinson-Cooper testified consistently with this very point, so there seems to be no real dispute about it.

If offered only for this alternative purpose, the statement could possibly be deemed admissible. *See* Fed. R. Civ. P. 56(c)(2). But this alternative purpose then offers no direct evidence of animus. Dr. White-Goyzueta cannot parlay one purpose into a different one—that is, offer the statement as evidence that the chancellor disagreed with the decision but then try to use it as evidence of the college's retaliatory motive (what she admits she cannot do). A reasonable jury could find that Dr. Robinson-Cooper disagreed with the decision, but not that the college or its president acted with discriminatory animus. In short, the record thus far offers no basis for a jury to find that Dr. White-Goyzueta's EEOC charge caused her termination.

With direct evidence a nonstarter, Dr. White-Goyzueta argues causation circumstantially. *See Baines*, 863 F.3d at 661. Circumstantial evidence may include suspicious timing, ambiguous statements of animus, evidence similarly situated colleagues were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual. *Greengrass v. Int'l Monetary*

9

*Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). Her suite of circumstantial evidence begins with what she views to be ambiguous statements.

Dr. Robinson-Cooper testified that three members of Ivy Tech's leadership suggested to her that Dr. White-Goyzueta was problematic [56-5 Tr. 67]. Dr. White-Goyzueta makes a meal of this word choice—"problematic"—but Dr. Robinson-Cooper describes each statement more specifically. Only Mr. McNichols called Dr. White-Goyzueta problematic; he also said Dr. Robinson-Cooper would have to deal with her behavior and that she filed an EEOC charge against the previous chancellor [*id.* Tr. 67-68]. As for the other comments, Dr. McCurdy told Dr. Robinson-Cooper, "I have to talk with you at some point about your VCAA" with no indication that he ultimately did [*id.* Tr. 73], and President Ellspermann told the chancellor to work closely with Mr. McNichols regarding her "VCAA" [*id.* Tr. 77].

These statements bear no real markers of retaliatory animus for a reasonable jury. Two occurred before Dr. Robinson-Cooper started her first day as Chancellor, and one occurred her first week, so they were far removed from Dr. White-Goyzueta's termination months later. *See, e.g., Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (timing). Disambiguating ambiguous statements is often for the jury, but Dr. McCurdy's brief aside isn't ambiguous at all. Though President Elspermann's directive to work closely with human resources relays a need for awareness, nothing more in the record fairly contextualizes it to mean that she wanted to collude to oust her because of her EEOC charge.

Mr. McNichols's comments require a bit more consideration, but none that suggests a retaliatory cause. The statement that Dr. White-Goyzueta was problematic and that Dr. Robinson-Cooper would have to deal with her behavior parallels the comment from President

Elspermann—both assert there are personnel issues present that Dr. Robinson-Cooper would need to be aware of in her new role. Dr. White-Goyzueta urges that a jury could infer more because Mr. McNichols also noted the EEOC charge, but observing as a human resources officer that a charge has been filed would reasonably be viewed by a jury as increasing the new chancellor's awareness, not more on this record. For a reasonable jury to infer causation, there would need to be an intelligible basis to distinguish retaliation from mere acknowledgement of performance issues and a pending EEOC charge. In lobbying for a different reading, Dr. White-Goyzueta offers nothing but conjecture. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (inferences supported by only speculation or conjecture cannot defeat summary judgment motion).

Dr. White-Goyzueta also cites the timing of her termination, calling it suspicious and the termination pretextual. She says Ivy Tech sought to mask its retaliatory motive by using the incident in which she laughed at then-Chancellor Robinson-Cooper as its excuse and then waiting 42 days until she and the college negotiated the withdrawal of her pending EEOC charge to terminate her. Ivy Tech says it terminated her for legitimate reasons and prudentially waited until the EEOC charge had been long resolved to avoid any appearance of retaliation.

Suspicious timing exists when an adverse employment action closely follows the protected activity, *Greengrass*, 776 F.3d at 486, but it must be "so close on the heels" that an inference of causation is sensible, *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011); *compare Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (same day is enough), *with Argyropoulos*, 539 F.3d at 734 (seven weeks not enough), *and Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 390 (7th Cir. 2012) (six months not enough). Save in egregious cases, suspicious timing can only

evince causation alongside other circumstantial evidence, *Milligan*, 686 F.3d at 389-90, and even then it "depends on context," *Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012).

Here, Dr. White-Goyzueta's EEOC charge precedes her termination by over seven months—in truth, a long enough gap to be counterevidence of causation. *See Filipovic v. K & R Express Sys.*, 176 F.3d 390, 399 (7th Cir. 1999) (four-month gap counters causal connection). Dr. White-Goyzueta certainly is right that a reasonable jury could find that Ivy Tech was later acting consciously of the pending EEOC charge—for instance, by not terminating her sooner based on performance issues because the EEOC charge remained pending—but this record would not permit that same jury to recast that consciousness into animus. In other words, and at most on this record, a reasonable jury could say the EEOC charge stopped her earlier termination, but not that it caused her eventual termination.

Taking a step back and viewing the evidence holistically, the timing of events, the statements by college representatives in 2022, the passing references to an EEOC charge, the earlier performance issues, and the laughing incident together would not allow a reasonable jury to conclude that Dr. White-Goyzueta was fired in November 2022 because of her EEOC charge in March 2022. *See Boss*, 816 F.3d at 918; *Castro*, 786 F.3d at 564.

Nor would the conclusion be different by assessing the evidence through the lens of the indirect approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To make a *prima facie* case there, she must show she (1) engaged in protected activity, (2) met Ivy Tech's legitimate expectations, (3) suffered an adverse action, and (4) was treated less favorably than similarly situated employees who didn't engage in the protected activity. *See Swyear*, 911 F.3d at 885. For one, she offers no similarly situated comparators. For another, she falls short of showing she met

Ivy Tech's legitimate expectations—from the earlier performance issues with which she agreed, through Chancellor Robinson-Cooper's memo detailing certain professional shortcomings, and concluding in an inappropriate laughing incident that the Chancellor could legitimately see as not just discourteous but insubordinate.

Dr. White-Goyzueta argues pretext as a counterpoint. Pretext is "an attempt to mask a discriminatory reason with a legitimate excuse[,] . . . not just faulty reasoning or mistaken judgment on the part of the employer." *Crain v. McDonough*, 63 F.4th 585, 593 (7th Cir. 2023) (citation omitted). The court must "evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Id.* (citation omitted). Dr. White-Goyzueta must identify weaknesses, implausibilities, inconsistencies, or contradictions in Ivy Tech's asserted reasons for taking adverse employment actions such that a reasonable person would doubt the college's credibility. *Id.*

On pretext, Dr. White-Goyzueta offers only speculation. *See Fischer*, 519 F.3d at 401. She suggests the laughing incident is mere cover, noting that Mr. McNichols instructed Chancellor Robinson-Cooper to document it. Merely because human resources tells an officer to document an incident doesn't mean that the incident was a lie, dissembling, or cover for hidden animus. Chancellor Robinson-Cooper characterized Dr. White-Goyzueta's laughing during the meeting and calling her face funny as demonstrating "a lack of respect for the office of the chancellor"—insubordinate conduct that would justify termination. Dr. White-Goyzueta essentially agrees one could view it as unprofessional [50-2 Tr. 170-71]. This built on a longer record, and documentation by way of a five-page memorandum, of what Ivy Tech viewed as ongoing performance issues, disrespect, and professional immaturity. This consistency lends support to

the earnestness of the college's justification for ending her employment without anything in the record for a reasonable jury to fairly recharacterize it all as pretext. *See Argyropoulos*, 539 F.3d at 734 (parallel negative performance reports before and after complaint undermines pretext inference).

## CONCLUSION

For these reasons, the court GRANTS Ivy Tech's summary judgment motion [49] and DIRECTS entry of judgment for Ivy Tech. This order vacates the remaining dates and terminates the case.

SO ORDERED.

June 20, 2025                           *s/ Damon R. Leichty*
                                        Judge, United States District Court